# *IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF TENNESSEE*

*IN RE:* )
*SUJUNG FILECCIA* ) *Case No. 06-05111*
*Debtor* ) *Chapter 7*
) *Judge George C. Paine, II*
)

___

## *MEMORANDUM OPINION*
___

The matter before the court is the debtor's oral motion to dismiss her bankruptcy case. The motion was made immediately preceding the trials in two pending adversary proceedings seeking to deny the debtor's discharge. The court denied the debtor's discharge pursuant to 11 U.S.C. §727, but took under advisement the debtor's motion to dismiss her bankruptcy case for her failure to provide tax returns to the trustee as required under 11 U.S.C. §521(e). For the reasons contained herein, the court denies the debtor's motion to dismiss.

The debtor filed bankruptcy on September 14, 2006. Two adversary proceedings were brought against the debtor seeking to deny her discharge. In the adversary proceeding brought by the trustee, the parties stipulated to the following facts:

1. The Debtor filed for relief under Title 11, Chapter 7 on September 14, 2006.

2. On January 10, 2007, the 2004 examination of the Debtor was taken.

3. The Debtor failed to disclose the following assets and transfers on her Statements and Schedules:

    a. real property known as 1625 Shell Road, Goodlettsville, Tennessee (which real property was subsequently disclosed in an amended Schedule A);

    b. the sale of Krystal's Cleaners on June 6, 2005;

    c. an account receivable and income from Krystal's Cleaners in the amount of $1,300.00 per month; and

    d. the sale of dry cleaning equipment in July 2006.

4. The Debtor continued to collect the account receivable from Krystal's Cleaners in the amount of $1,300.00 per month until February, 2007, and has failed to turn over the post-petition proceeds to the Trustee.

5. On March 2, 2007, the Court entered an Order Compelling Turnover of all post-petition funds received by the Debtor from Krystal's Cleaners, copies of any checks received by the Debtor from Krystal's Cleaners, copies of all documentation regarding the sale of Krystal's Cleaners and the remaining account receivable due to the Debtor. At the pretrial conference on March 26, 2007, counsel for the Debtor provided to counsel for the Trustee the closing documents for the sale of Krystal's Cleaners.

6. The Debtor did not amend her statements and schedules to include the sale of Krystal's Cleaners, the account receivable, and the income related to that sale until May 11, 2007. Prior to the amendment to Schedule I to include the income from the sale of Krystal's Cleaners, the Debtor did not disclose any income on Schedule I.

7. At the 2004 Examination, the Debtor admitted her failure to disclose the above-referenced assets and transfers.

8. The Debtor testified at her 2004 Examination that she had no explanation for her failure to disclose the assets other than she did not know that she was required to disclose these assets.

9. The Debtor testified at her 2004 Examination that she was entitled to receive $1,300.00 per month from the sale of an entity known as Krystal's Cleaners in Michigan. The Debtor failed to disclose this account receivable on Schedule B, failed to disclose it as income on Schedule I, and failed to disclose the transfer in response to question number 10 on her statement of financial affairs. After the 2004 Examination, counsel for the Trustee stated to the Debtor that the account receivable is property of the bankruptcy estate and requested turnover of the proceeds that she had received since the filing of the bankruptcy case and requested turnover of all future proceeds.

10. The Trustee followed up with an email to counsel for the Debtor on January 11, 2007, confirming that the receivable due to the Debtor from Krystal's Cleaners is property of the bankruptcy estate. The Trustee further demanded turnover of all payments made to the Debtor after the bankruptcy filing. In addition, the

Trustee demanded that all future payments be made payable to Samuel K. Crocker, Trustee, and forwarded to the Trustee. The Trustee also confirmed his request for contact information for Krystal's Cleaners, copies of any checks received by the Debtor from Krystal's Cleaners, copies of all documentation regarding the sale of Krystal's Cleaners and the remaining account receivable due to the Debtor. The Trustee sent a second email to counsel for the Debtor on January 19, 2007, requesting a response to the January 11, 2007 email. On January 22, 2007, counsel for the Debtor filed a Motion to Withdraw as Attorney for Debtor.

11. On January 12, 2007, counsel for the Trustee wrote a letter to Krystal's Cleaners requesting the total balance owed to the Debtor, any and all documentation related to the purchase of Krystal's Cleaners, and any and all documentation related to the payments made to the Debtor. The Trustee advised Krystal's Cleaners that the remaining payments owed to the Debtor are property of the bankruptcy estate and that all future payments needed to be made directly to Samuel K. Crocker, Trustee.

12. The Trustee has received monthly payments from Krystal's Cleaners since the January 12, 2007, letter to Krystal's Cleaners in the amount of $1,300.00 per month for the months of February 2007, March 2007, and April 2007.

13. In her Answer to the Complaint, the Debtor admitted that she failed to disclose in her statements and schedules the real property known as 1625 Shell Road, Goodlettsville, Tennessee, but states that the Debtor's (former) attorney had knowledge of the real property at the time of the filing and failed to include it in Schedule A. The Debtor admitted in her 2004 Examination that she owned the real property at the time of the filing of the bankruptcy petition, but failed to disclose it because her husband was going to receive the real property as part of a divorce settlement.

14. With regard to the Debtor's failure to disclose the sale of Krystal's Cleaners on her petition, she claims in her Answer to the Complaint that the information was disclosed on the Debtor's tax return provided to the Debtor's attorney and the Trustee.

15. The Trustee discovered that the Debtor owned the real property known as 1625 Shell Road, Goodlettsville, Tennessee from another creditor of the Debtor. When questioned about the real property prior to the 2004 Examination, previous counsel amended Schedule A to include the real property.

16. The sale of Krystal's Cleaners and the continuing account receivable was not disclosed until the Debtor was questioned about her 2005 tax return at the 2004 Examination.

17. At one point, in the 2004 Examination, when questioned about the sale of dry cleaning equipment in July 2006 (60 days prior to the filing of her chapter 7 case), the Debtor stated "because it is my private personal matters I cannot answer." The Debtor later testified in her 2004 Examination that she could not remember the name of the person to whom she sold the dry cleaning equipment for $20,000 cash and had no paperwork related to the transaction. 18. With regard to the sale of Krystal's Cleaners, the Debtor testified in her 2004 Examination that it was sold to "Europeans" whose names she could not

remember for $20,000 cash and that she did not know where the documents were located that reflect the sale of Krystal's Cleaners.

19. It was also disclosed for the first time by the Debtor in her 2004 Examination that the Debtor sold Krystal's Cleaners for $75,000.00 with $20,000 in cash and the balance in the form of a note payable to the Debtor. The Debtor then admitted in the 2004 Examination that she was receiving $1,300.00 per month from the Krystal's Cleaners note. The Debtor further admitted in the 2004 Examination that she did not disclose the account receivable in her bankruptcy petition because she did not know that it needed to be disclosed.

20. The Trustee never received copies of the Debtor's tax returns.

21. The U.S. Trustee received the Debtor's 2004 and 2005 tax returns.

22. Krystal's Cleaners has failed to answer the Complaint.

23. The Trustee and the Debtor stipulate to the authenticity and admissibility of the exhibits contained on the Exhibit Lists filed by the Debtor and the Trustee in this adversary proceeding.

Just as the trials were set to proceed, debtor's counsel made an oral motion to dismiss the bankruptcy case based upon the Stipulation that the debtor failed to turn over her tax returns to the trustee timely as required by section 521(e)(2)(A) of the Code. According to the debtor, the failure to turn over the tax returns to the trustee requires the court to dismiss her case. The trustee and creditor seeking denial of the debtor's discharge opposed dismissal.

Pursuant to 11 U.S.C. § 521(e):

(2)(A) The debtor shall provide--

(i) not later than 7 days before the date first set for the first meeting of creditors, to the trustee a copy of the Federal income tax return required under applicable law (or at the election of the debtor, a transcript of such return) for the most recent tax year ending immediately before the commencement of the case and for which a Federal income tax return was filed; and

(ii) at the same time the debtor complies with clause (i), a copy of such return (or if elected under clause (i), such transcript) to any creditor that timely requests such copy.

(B) If the debtor fails to comply with clause (i) or (ii) of subparagraph (A),

> the court shall dismiss the case unless the debtor demonstrates that the failure to so comply is due to circumstances beyond the control of the debtor.

11 U.S.C. 521(e)(2) (as amended under the Bankruptcy Abuse and Consumer Protection Act of 2005) (hereinafter "BAPCPA").

In all cases of statutory construction, the starting point is the language employed by Congress. ***Appleton v. First Nat'l Bank of Ohio***, 62 F.3d 791, 801 (6th Cir.1995). Where "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.' " ***United States v. Ron Pair Enter., Inc***., 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting ***Caminetti v. United States***, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)). The court must look beyond the language of the statute, however, when the text is ambiguous or when, although the statute is facially clear, a literal interpretation would lead to internal inconsistencies, an absurd result, or an interpretation inconsistent with the intent of Congress. ***See United States v. Turkette***, 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); ***Appleton***, 62 F.3d at 801; ***Vergos v. Gregg's Enterprises, Inc***. 159 F.3d 989, 990 (6th Cir. 1998).

In this case, Congress' enactment of the BAPCPA, allows a debtor to abuse the bankruptcy code by requiring the court to dismiss a case to advance a dishonest debtor's own interests. Prior to enactment of BAPCPA, the courts could and did ferret out dishonest debtors trying to abuse the privilege of a discharge. However, Congress' amendment to fix a system that they felt was broken now allows a debtor to abuse the bankruptcy code with the Bankruptcy Code's assistance and even mandate.

Under BAPCPA, Congress apparently intended to allow a bad faith debtor, who failed to abide by section 521(e), to dismiss their bankruptcy case. Congress'

5-U.S. Bankruptcy Court, M.D. Tenn.

amendments require dismissal, and allow a debtor to manipulate creditors and a chapter 7 trustee when "unanticipated" discharge litigation arises. Thus, Congress has given the bad faith debtor an "escape hatch" out of bankruptcy, where the debtor who complies with section 521(e) can only dismiss their bankruptcy case on notice and hearing pursuant to 11 U.S.C. § 707.

Congress intended non-compliance with § 521(e) to trigger dismissal leaving the debtor without the protection of bankruptcy, and allowing creditors to exercise collection remedies under non-bankruptcy law. Dismissal returns debtors to the briar patch they attempted to escape by filing bankruptcy, and, following Congress' intention, manipulative debtors dismissing their cases does not lead to an absurd or unintended result.

Regardless, this court will not allow dishonest debtors to abuse the court system despite Congress' direction that courts "shall" dismiss bankruptcy cases when tax returns are not timely provided to the trustee. In fact, this is the first time in twenty-five years on the bench that the court has blatantly disregarded the strict language of a statute to achieve the outcome desired. This apparently makes the undersigned an activist judge in every sense of the word. So, this court chooses to deny the debtor's motion, and an appellate court is welcome to reverse and apply the law as written if they so choose.

Several other judges facing similar factual circumstances have likewise chosen to find away around Congress' poorly drafted attempt to amend the Bankruptcy Code. In *In re Parker*, 351 B.R. 790 (Bankr. N.D.Ga. 2006), a debtor did not participate in budget and credit counseling prior to filing his petition. Fifteen days post-petition, the debtor sought court approval to obtain credit counseling services, although the debtor never actually obtained the credit counseling briefing as required by section 109(h).

When the chapter 7 trustee filed a motion to sell the debtor's "Fantasy Houseboat," the debtor then filed a motion to dismiss his bankruptcy case, arguing that he was ineligible to be a debtor for failing to comply with the Credit Counseling Requirements. He also claimed that his case should have been automatically dismissed under § 521(i)(1) for not submitting the required payroll information. The UST opposed debtor's motion and supported the sale. The court denied the debtor's motion, holding that the debtor had waived his right to contest eligibility by actively participating in his bankruptcy case for nearly four months. The court also relied on the concept of judicial estoppel. Finally, the court concluded that the automatic dismissal under section 521(a) could be avoided simply by excusing the debtor from filing the required documents. In other words, "shall" doesn't mean "shall." **See also In re Mendez**, ___ B.R. ___, *2007 WL 1119891 (9th Cir. BAP, Mar. 28, 2007)* (finding debtor waived right to dismiss case under 109(h) for failing to obtain Credit Counseling by participating in the bankruptcy case); **In re Withers,** ___ B.R. ___, *2007 WL 628078 (Bankr. N.D. Cal. Feb. 26, 2007)* ("[T]he eligibility requirement of 11 U.S.C. § 109(h) is not jurisdictional and that the Debtor is judicially estopped from demanding that the case be dismissed based on his failure to obtain credit counseling, and concluding that it has the power to excuse the Debtor from filing the documents specified by 11 U.S.C. § 521(a)(1)(B)); **In re Hall, 2007 WL 1231662** ("This case is the poster child for a bad faith debtor. Relying upon the decision of the Supreme Court in **Marrama**,[1] this Court concludes that when a debtor seeks an order confirming the dismissal of his case under § 521(i)(2) by reason of his own defalcation under § 521(a)(1), it is legitimate for the Court to inquire into the

---

[1] **Marrama v. Citizens Bank of Massachusetts**, 127 S.Ct. 1105 (2007). In this case, the United States Supreme Court conditions the Chapter 7 debtor's seemingly unconditional right under 11 U.S.C. § 706(a) to convert his case to a case under Chapter 13 to the extent the debtor had engaged in pre-petition bad faith conduct which would establish "cause" that would warrant dismissal or reconversion of his Chapter 13 case and render him unqualified to be a debtor under Chapter 13. The Supreme Court ruled that what appeared to be an unfettered right under 11 U.S.C. § 707(a) was, in fact, not unfettered.

7-U.S. Bankruptcy Court, M.D. Tenn.

motivation and/or good faith (or lack thereof) of the debtor in seeking such order; and, in the event the debtor is acting in bad faith, to properly condition such dismissal so that the debtor is not rewarded by his own malfeasance.").

It is clear, based upon the stipulations filed by the parties and the court's denial of the debtor's discharge, that this debtor availed herself of the privileges of bankruptcy, and when those protections no longer suited her needs, she sought to dismiss her case based on her own malfeasance. Based upon all of the foregoing, the court DENIES the debtor's oral motion to dismiss her case. The court will instruct the chapter 7 trustee to prepare an order, not inconsistent with this Memorandum, within five (5) days of its entry.

***THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY
AS INDICATED AT THE TOP OF THE FIRST PAGE.***